UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES H. FISCHER,<br>      Plaintiff,<br>v.<br>DEAN ERIC STIGLITZ,<br>LAURIE ANNE HERBOLDSHEIMER,<br>GOLDEN RULE HONEY, LLC<br>      Defendants. | Case:  **16 cv 40076-TSH**<br><br>**FRCP 59(e) MOTION FOR RECONSIDERATION** |

The Court's Doc #41 includes several points that seem errors of law, and others that seem errors of fact. Plaintiff asks the Court to reconsider, in light of these seeming errors, under FRCP 59(e).

**FRCP 59(e)**

> "…the movant may demonstrate that the motion is necessary to correct manifest errors of law or fact upon which the judgment is based…" [1]

Clearly, a dismissal based upon errors of fact or law when those errors are clear and compelling would be a manifest injustice.

In considering a motion to dismiss under FRCP 12(b) the court shall:

> *"accept the well-pleaded factual averments of the latest (second amended) complaint as true, and construe these facts in the light most flattering to the [plaintiff's] cause ... "* [2]

The wording of some of the Court's finding seems to be taken from Defendants' pleadings, rather than from the Complaint.  It is assumed that the facts to be considered are those pled in the Complaint, rather than the starkly divergent views offered by Defendants.

Since this case was filed, the impact of false claims in ads masquerading as "social media posts" has become a major political issue in the context of the 2016 election, Facebook, and Instagram. This case is no different, but certainly much smaller. In this pleading, the Court's finding is cited by major heading and page number, and the amended complaint is cited by paragraph number.

---

[1] Feldman Law Group PC v. Liberty Mut. Ins. Co., 819 F. Supp. 2d 247 (SDNY 2011) citing Federal Practice and Procedure § 2810.1
[2] Gooley v. Mobil Oil Corp., 851 F. 2d 513 - Court of Appeals, 1st Circuit 1988

## False Association/False Endorsement

**Pg 2 -** *"To survive dismissal, Fischer's claim for relief under this section of the statute requires factual allegations of conduct that created a likelihood of confusion among potential purchasers regarding his sponsorship or approval of a product or services provided by the Defendants."*

"P*roducts or services*" are irrelevant to this false association complaint.  Instead, it is Plaintiff's "*commercial activities*" as specifically cited in 15 USC §1125(a)(1)(A) that are falsely connected by Defendants to themselves and their book in the promotion of Defendants' book and services. In plain language, Defendants promoted their book by falsely claiming many times that Plaintiff made legal threats to their publisher, Penguin Random House, and against many others. The "legal threats" are unethical "*commercial activities*" of which Plaintiff was falsely accused in promotion of Defendants' book and services on social media.  Such accusations are extremely damaging to Plaintiff's brand, and clearly confused many people, evinced by the reaction of the social media community shown in the Exhibits.

**Pg 2 -** *"I do not find that any of the complained of postings would have confused online participants as to any affiliation of Fischer with the Defendants."*

"Affiliation" is also irrelevant here.  It is mere "connection", as specifically cited in 15 USC §1125(a)(1)(A) that is applicable.  Plaintiff did not even know Defendants existed, let alone know their names or anything about them until hearing of their social media advertising and promotion, so there is no "association" or "affiliation" or other positive relationship pled, such as a product endorsement.  The "connection" falsely claimed was entirely negative – a false claim that Plaintiff knew of Defendants and their book, and was engaging in some sort of vendetta against it.  As the Exhibits show, many people were confused, and believed Defendants false statements, to the detriment of Plaintiff's brand, with negative impact on all Plaintiff's products and services.

### False advertising of Defendants' Products/Services

The finding lists partial criteria in (1)-(5), but they do not fully reflect the statute, which states:

(B) *in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,*

What is missing from the listed (1)-(5) criteria is:

a) "promotion" as distinct from "advertising" or "sales"
b) "commercial activities" as distinct from "products/goods/services"

*Pg 3 - that evidence any intent to induce a purchaser to buy the Defendant's goods.*

There need not be a short-term "induce to buy" intent.  The statute is satisfied by promotion alone, which is often aimed at things like building name recognition rather than "selling". The statute addresses far more than the narrow category of "inducements to purchase".  "Promotion" need not be intended to induce immediate purchase, but may only be to make people aware of Defendants' goods and services.   The Defendants promoted their book as controversial, and with false accusations that Plaintiff had threatened Penguin Random House with legal action over the book, and thereby worthy of attention.

*Pg 3 – "Plaintiff claims that the dispute between the Defendants and others as to proper beekeeping methodology creates an air of controversy…"*

The claim above is not Plaintiff's. It is not found in the complaint. It is purely Defendants' argument. Defendants' attempts to speak for the Complaint aside, the only controversy at issue in this case is the controversy generated by the false accusations made by Defendants about Plaintiff's business activities.  The subject of beekeeping itself is irrelevant to this case, it is the mere subject matter of the book promoted by Defendants and the focus of the services offered by Defendants.  This case is solely about false accusations made against Plaintiff and others.  Beekeeping is a distracting detail, having no bearing on the actions of Defendants.  Defendants' book could just as easily be about cooking, and it would make no difference to this case, as

Plaintiff is not, and was never involved in any "debate" with Defendants, or anyone else involved in the case over any issue. Plaintiff was completely unaware of his brand name being misused, just as the sportswriter Buzz Bissinger was unaware that his name was being misused by Defendants to promote their book and services.

**Pg 3 – "…the statements reflect a fair debate over proper beekeeping methods and a defense of the methodology espoused in The Guide."**

The statement above decides an issue of fact, rather than simply evaluating the pleading for plausibility and completeness. This, and the statement above it seem taken from Defendants' pleadings rather than an evaluation of any specific pleading in the complaint.

### False Advertising Concerning Plaintiffs Commercial Activity

**Pg 3 – "*…do not reveal any any mention of the Plaintiff's products… a quality or characteristics of Fischer's goods or services… "***

Again, the "commercial activities" Lanham Act prong applies here, not "goods and services":

> "*the [1988 Amendments to the Lanham Act] also overruled aspects of existing law, most significantly by covering trade libel or product disparagement (i.e., misrepresentations about the plaintiff's goods and services) and by permitting actions based on misrepresentations about commercial activities as well as goods and services.*" [3]

***Pg 3 -*** **Nor are there any specific allegation of how the Defendant's statements caused any harm**

The harm done is explained multiple times in the Complaint as being reputational damage to Plaintiff's brand name, with inherent impact on sales, revenues, and profits.

See ¶51 - As a direct result of Defendant's ads, Plaintiff's brand name has suffered severe damage.

  ¶53 - The damage continues to the present day, as Defendants' ads remain on display to the present.

  ¶91 - As a direct and proximate result of Defendants' deliberate acts, the value of Plaintiff's surname/brand name has been, and continues to be, damaged.

  ¶110 -  …sold and sell Defendants' products/services rather than Plaintiffs, and damages the value of Plaintiff's brand name

---

[3] Proctor & Gamble v. Haugen, 222 F.3d 1262, 1268, 1271-72 (10th Cir. 2000)

## Right of Publicity Violations

**Pg 4 - no factual allegations which would cause one to believe that there was any exploitation for commercial purposes.**

Section 3A begins:

> "*Any person whose name, portrait or picture is used within the commonwealth for advertising purposes or for the purposes of trade…*"

The use of Plaintiffs name in the promotion of Defendants' book and services is plainly stated in the complaint, and these are clearly "*for the purposes of trade*" and hence, commercial purposes, including:

> ¶1- …promoting Defendants' book, products, services, workshops, and conferences
>
> ¶26 - Defendants turned to social media for no-cost promotion and advertising to attract attention,
>
> ¶34 - Defendants overtly stated that their goal was to fabricate controversy, and to enlist their publisher in promoting the controversy to sell the book.
>
> **¶44.** The ads are part of an organized advertising/promotional campaign, widely disseminated
>
> **¶47 -** Defendants repeatedly and widely disseminated their ads, making the same false claims specifically to beekeepers on multiple social media platforms

## Unfair Competition

**Pg 4 - there are no allegations that *the Plaintiff is located in or claims an injury in Massachusetts***

The statute changed, and the Commonwealth has not properly informed the Court of the change.

> Under the previous amendment to ch. 93A, Plaintiff could not bring a 93A claim unless the Defendant had a place of business in Massachusetts at the time the violative act or practice was employed. (see 1985 Mass. Acts c. 278) The legislature amended ch. 93A on July 28, 1986, striking out the provision requiring that both parties have a place of business in Massachusetts and adding the requirement that "the actions and transactions constituting the alleged ... unfair and deceptive act or practice [must have] occurred primarily and substantially within the Commonwealth." (see 1986 Mass. Acts c. 363)

The current statute clearly requires only that the acts of Defendants be "substantially within the commonwealth". There is no requirement that the injury be in the Commonwealth. Further, the burden of proof is on any person claiming that the acts did not occur within the commonwealth:

> Ch 93A Section 11 - *No action shall be brought or maintained under this section unless the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth. For the purposes of this paragraph, the burden of proof shall be upon the person claiming that such transactions and actions did not occur primarily and substantially within the commonwealth.*

As the individual Defendants are MA residents, and the corporate Defendant is an MA entity, there seems little doubt that their acts took place in the commonwealth unless otherwise specified, and the Defendants did not claim any acts outside the commonwealth. There is no requirement that injury be sustained within the commonwealth, so Plaintiff is left to conclude that this is an alternative, equal to a claim of "acts within the commonwealth", rather than an additional requirement. If the Court requires a showing of injury in the commonwealth, as of 2017, there were over 45,000 hives of bees in Mass alone, managed by roughly 8,000 beekeepers. The bulk the hives are commercial hives, the rest hobbyist hives. Damage to Plaintiff's brand inherently hurts Plaintiff's sales, even if assuming only local influence by Defendants.

### Tortious Interference with Prospective Economic Advantage

**Pg 4 -whether the Defendants were aware of his customers…**

There are numerous statements that make it clear that Defendants were aware of Plaintiff's customers, what they purchased, and why they purchased Plaintiff's products and services

> Ex A Exhibts Pg 1 "known to many of us"
> Ex B Exhibits Pg 10 "his name triggered my memory He sells chemicals used in Beehives"
> Ex H Exhibits Pg 23 "the inexplicably toxic actions of the person with their name on the bottle are certainly relevant…. Nothing like a scientist with a mission to revise history."

From the above alone, we can see that Plaintiff is:

a) "*known to many of us*", and this could only be through knowledge of his products, or through reading his articles, as Plaintiff has never met Defendants.

b) "*He sells chemicals*" is one way of describing one of Plaintiff's products, despite the USDA approval for use in USDA Certified Organic honey production and "All Natural" in large print on the label.  This evinces a knowledge that Plaintiff's customers are beekeepers

c) The phrase "with their name on the bottle" clearly indicates that Defendants even know that one of Plaintiff's products is sold in both bottles and gallon jugs.

d) "*Nothing like a scientist with a mission to revise history.*" Admits knowledge of Plaintiffs research, speaking, and articles, and who they are directed to.

**Pg 4 - nor does he specify the opportunity that was lost, or whether the Defendants were aware of specific opportunity, or that they employed improper means to interfere with that opportunity.**

The above is addressed in the following complaint sections:

¶102. Defendants' repeated false statements in their ads have had a significant material impact on a substantial number of beekeepers who might otherwise buy Plaintiff's products/services, and also prompts them to repeat the false statements to others, reviling Plaintiff's brand.

¶103. As a direct competitor, Plaintiff has been and is likely to be injured as a result of the misrepresentation, by direct diversion of sales and/or by a lessening of brand goodwill

¶124. Defendants unfairly exploit and infringe upon Plaintiff's valuable goodwill and his intellectual property to promote and sell their own products and services, directly damaging Plaintiff's intellectual property, goodwill, reputation in the marketplace, and sales.

If the Court seeks specific named individuals, there are enough negative comments made in the Exhibits and associated materials to assure that specific examples of specific lost sales can be documented, but this is a task for discovery.  At the pleading stage, there is no need to name specific contracts broken, as the complaint is "Tortious Interference with Prospective Economic Advantage" rather than "Tortious Interference with Contract".

**Errors of Fact Underlying the Court's Evaluation**

Several items of fact seem drawn from Defendants' pleadings rather than the complaint, as they contradict the complaint, argue with the complaint, or are otherwise incorrect. They are listed below, as they seem to have colored the Court's evaluation.

**Pg 1 - online communications critical of his theories and methodology of beekeeping**

The basis of the suit is Defendants online ads promoting their book. See ¶31, 42, 43. Plaintiff's "theories and methodology of beekeeping" are never mentioned in the complaint, nor are Defendants' theories mentioned. The ads at issue solely falsely state, over and over, that Plaintiff threatened Defendants' publisher and others with presumably baseless lawsuits, a claim firmly refuted by every party identified by Defendants, as attached in the Exhibits.

**Pg 1 - Online Exchanges between the Defendant, Dean Eric Stiglitz…**

This language is not taken from the Complaint, but instead seems from Defendants' pleadings. The complaint focuses on advertising and promotion by Defendants. The feedback of potential customers to the ads is rarely of interest in this case, except to demonstrate the commercial intentions of Defendants, and to gauge the typical reactions to the false statements made.

**Pg 1 – "Dean Eric Stiglitz"**

Defendants are not individually named, as it is not known which Defendant wrote what ads. The Court names a specific individual, rather than the facts pled, again seeming to take Defendants' pleadings as fact, rather than Plaintiff's complaint.

**Pg 1 – "…members of the Organic Beekeepers Discussion Group and BeeSource Forum**

Defendants' ads were seen far beyond the "members" of the websites on which they advertised. Non-members could and still can easily see the ads. By creating controversy, Defendants made their ads "viral". For example, Dr. David Heaf, mentioned in ¶29, is a member of neither group,

but called Plaintiff's attention to what had been forwarded through many hands, as the controversial accusations against Plaintiff had been "viral" for some time among hobbyist beekeepers.  The ads went far beyond the social media platforms in which they were placed,

**Pg 1 – "involved beekeeping advice"**

Defendants' ads only falsely state that Plaintiff conducts his business in an unethical manner, in that he uses his profits to threaten lawsuits against multiple parties.  Beekeeping is a distraction here, nothing more.  The subject of Defendants' book is irrelevant, as are the contents.  This suit is about Defendants' ads containing false claims that Plaintiff's commercial activities are unethical.

**Pg 2 – allegedly learned**

The complaint is to be read as true, not as "*allegedly* true".  The use of the term causes Plaintiff profound concern at the early stage of a motion to dismiss.

**Pg 2 - That posting was generated by an email**

There was no email – the claimed email was Defendants' fabrication.  Further, Defendants' publisher confirms that no such email was ever sent, nor were any other "legal threats" of any type made by Plaintiff. (Exhibit K)

**Pg 2- It is these exchanges that are the genesis of the Plaintiff's allegations**.

It is the repeated ads that are the basis for the complaint.  Any comments from potential customers in reaction to the ads only proves the impact of the ads.

Dated April 22, 2018                                  /s/ James Fischer
                                                                James H. Fischer
                                                                Plaintiff
                                                                PO Box 287048
                                                                New York, NY 10128
                                                                917-628-4052
                                                                james.fischer@gmail.com